MORELAND ET AL. *v*. PEOPLES BANK OF WAYNESBORO.

[74 South. 828, In Banc.]

1. PRINCIPAL AND SURETY. *Discharge of surety.  Loss of other sureties. Bank deposit.*

   A bank is under no duty to a surety on a note held by it to apply or credit on the note the amount the principal may have on deposit in the bank at or after the maturity of the note, whether the amount be sufficient to satisfy the note or not.

2. BANKS AND BANKING. *Deposits.  Right of set-off.*

   A bank has the right if it so desires, to apply whatever amount the maker of a note held by it, has on deposit with it to a payment on the note, or in other words the bank itself has the right to set off the amount it owes a depositor, against the amount owed it by the depositor.

3. BANKS AND BANKING. *Deposit.  Nature of relation.*

   The relation between a bank and a depositor is simply one of debtor and creditor and the deposit is not a trust fund nor does the bank have a lien thereon for the payment of a depositor's note.

4. PRINCIPAL AND SURETY. *Actions against surety.  Plea.  Insolvency of principal.*

   In a suit against the principal and surety on a note, a plea by the surety that the plaintiff bank knew that the principal had at times overdrawn his account, and was likely to become wholly insolvent at any time, does not allege that the principal was insolvent and hence it is not necessary for the court to decide the question of whether or not if the defendant, the principal in the note had been insolvent at the time of the maturity of the note and this fact had been known to the bank, this would have made any difference in the duty of the bank.

Suit by the Peoples Bank of Waynesboro against David Moreland and others.  From a judgment for plaintiff, defendants appeal.

The facts are fully stated in the opinion of the court.

*Luther K. Saul,* for appellant.

The appellee's attorneys seem to be laboring under the impression that this case is being heard upon an issue of facts, when it is only upon the pleas to the declaration and the demurrers to the pleas. So the question of the appellant being a joint maker of the note cannot be considered, for he alleged "that he was only surety on the note and that the appellee had notice of this," and the appellee admits this by its demurrer to this plea. If appellee desired to show that the appellant was a joint-maker of the note, it should have taken issue to the plea by replication.

Now, I admit that it may have, or it may not have been the duty of the bank to offset any funds in its possession at the time of the maturity of the note, or subsequent thereto, belonging to R. P. Cook, if he was in a solvent condition. This has been so held by various courts. But the case at bar presents quite a different state of facts.

As.to the sufficiency or insufficiency of the money on deposits at the bank to the credit of R. P. Cook, I think the learned judge is right in the case of *H. S. Davenport* v. *State Banking Co.,* 8 L. R. A. (N. S.) page 955. Referring especially to this kind of question he said: "If this principle applies at all to deposits of money in a bank, it is difficult to see, why it should be rigidly limited to deposits held by the bank at the time of the depositor's debt to the bank matures; for, if the means of satisfaction can be said to be within the control of the bank, then they would seem equally within its control when the deposits are made after the debt matures." But, however, this language was intended to reconcile the various decisions without regard to the solvency or insolvency of the principal obligor, and as said in my first brief, the final decision which will set at rest this seemingly unsettled point, must be

had on the point "the solvency or insolvency of the principal obligor."

Counsel for appellee seems to ignore entirely the facts as to the allegation of the insolvency of the principal obligor and which is admitted by their demurrer to this plea, by citing and quoting decisions wherein this particular point was not under discussion at all. These decisions are evidently right under the facts that were being considered by the court, but in the cases holding that a surety is released, and cited by me in my first brief, I wish again to call the court's attention and to the fact that the insolvency of the principal obligor was plead and to hold that where a bank knows that the principal obligor is insolvent, or is likely to be so, and has the means of collecting what is due it within its possession and fails and refuses to do so and thus defeats a suit for contribution by the surety, does not relinqish the surety, would be a wrong that could not be easily righted, for as I understand the law and facts in this case, it should be reversed.

*Heidelberg & Johnston,* for appellant.

As the attorney for the appellant states in his brief that he relies on the matters contained in the special plea to secure a reversal of the case, we shall direct our attention to the allegations contained in this plea. It is too clear for argument that even if it be true, as stated in the second plea, that appellant was only surety on the note and that he received no part of the consideration and that J. A. Leggett, the agent of plaintiff, after the maturity of the note and without any consideration, told the appellant that he was released from the note and that he would look alone to Cook, that these facts will not have the effect of releasing appellant from the note. There must be a valuable consideration for a release. 34 Cyc., 1048.

The plea of the general issue filed to the declaration is not the proper plea to a declaration founded on a promissory note, and is equivalent to a plea of *non est factum,* which must be sworn to. Sec. 1794, Code 1906; 12 Smedes and Marshall, 124.

The attorney for the appellant in drawing the special plea upon which he relies, appears for a reversal to be laboring under the misapprehension that it was the duty of the plaintiff to notify the appellant of the fact that his note had not been paid, it was the duty of the appellant to pay the note or see that it was paid at maturity and the appellee was under no legal obligation to notify him of his failure to do what he had promised to do.

In support of our contention that the bank was under no legal duty to apply the deposits of Cook to the payment of the joint note due by him and Moreland, we cite the court to the following authorities: *First National Bank* v. *Peltz,* 36 L. R. A. 832, also reported in 53 Am. State Reports 686; *Peoples Bank of Wilkes-Barre* v. *Legrand,* 49 Am. Reports (Pa.) 126, *National Bank of Newburgh* v. *Smith,* 23 Am. Reports (N. Y.) 48 *Voss* v. *German-American Bank of Chicago,* 25 American Reports (Ill.) 415; also note on pages 98, 99 and 100 of 115 Am. State Reports.

The case of *Pursefull* v. *Pineville Banking Co., Assignee,* 30 S. W. 203, cited in the brief or appellant's attorney does not sustain his contention. It is only held in that case that if a bank owns and holds a note and at the maturity thereof holds a general deposit for the maker sufficient to pay the note, which it permits to be checked out and the maker afterwards becomes insolvent, the surety on the note is not liable. In the case before this court the bank did not have sufficient funds on deposit at the time of the maturity of the note to pay the amount due thereon. Nothing more is held in the case of *German National Bank of Alleghany City* v. *Foreman,* 21 Atl. Rep., 20, cited in the brief of

appellant's attorney. In this case the deposit was
sufficient at the time of the maturity of the note to
liquidate it and the party suing was the indorser and not
a joint maker of the note.

In the case of *Bank of Taylorsville* v. *Hardesty,* 91
S. W. 729, also cited in appellant's brief, the proof
showed that the administrator of the interested surety
went to the bank and inquired of its cashier whether
the decedent's named appeared as surety upon any notes
held by the bank; and he stated that it did not. It
also appeared that the administrator was deceived by
the cashier and that as a matter of fact his name did
appear on a note and the administrator was prevented
by such misrepresentation from taking steps to indemni-
fy her against loss to the estate by reason of the
suretyship; that at the time the representation was
made by the cashier, the maker of the note was solvent
and afterwards became insolvent, and that if the admin-
istrator had the note to pay, it would have been a clear
loss to the estate caused by a misrepresentation of the
cashier. Nothing of this kind appears in the present
suit. It, therefore, furnishes no authority to secure a
reversal of the judgment of the court below. For the
foregoing reasons we submit that the court below did
not err in sustaining a demurrer to the defendant's
pleas and that the judgment of the lower court should
be affirmed.

*J. B. Saxon,* for appellee.

Appellant admits and swears to it, that the bank had
at several times after the note fell due enough money
on deposit to the general credit of Cook to pay the
note, and on top of page six he swears that he had in
his own possession enough money belonging to Cook
to cover the amount of the note, but claims as his excuse
for not doing it, that he had no notice that the note was
not paid at the bank; Appellant Moreland evidently

knew that he himself had not paid the note, and there was nothing to hinder him from asking Cook about it, or calling up the bank and finding out whether or not the note had been paid, Moreland certainly knew that if he did not see that Cook paid the note, that he would have it to pay, and if Cook was insolvent, Moreland knew it, and yet he admits that he could have gotten his money out of Cook but rather than ask a few questions he goes ahead and pays Cook and gives the court as his paltry excuse, that he had no notice; and that the bank should have done a thing that appellant swears that he did not do himself; that the bank should have held on to the money when they had it in their hands, and swears that he had it. If Moreland would not protect himself, why call on the bank to do so? This is arguing the question from the words of appellant's own mouth.

We submit if the court please that this is but a mere subterfuge on the part of appellant Moreland to try to avoid the payment of an honest obligation. With all due respect to counsel for appellant, and his opinion as to the application of the law in this case I must confess that I can see no application of the authorities cited by appellant to this case. I can find no annallogy in the case cited by appellant's counsel and the case at bar. But take it for granted for sake of argument, you will find that Mr. Saul, appellant's counsel, admits that as he sees it, the question is a mooted one, and that the weight of auhority is in favor of appellee bank; and ask the court to reverse the entire weight of authority together with the opinion of the lower court in favor of him and the majority opinion of the various opinions. The court will find that even the authority cited in support of appellant's contentions are minority reports or desenting opinions of a few jurists in various states.

Without further argument on my part as my associates Messrs. Heidelburg & Johnson have covered the other points in the case and have cited the authority in point; I will submit the case, and very respectfully

ask that the court affirm the decision of the lower court, and the judgment as it is written by the court below.

SYKES, J., delivered the opinion of the court.

The appellee bank instituted suit in the circuit court of Wayne county against David Moreland and Rufus P. Cook upon a promissory note for three hundred and fifty dollars payable to the order of the said bank and signed by the two appellants. The appellant Moreland filed a special plea in the case, admitting the execution of the note, but claiming: That he signed the note merely as surety for his codefendant, Cook, which fact was known to the bank. That the defendant Cook had an account with the bank which continued until the maturity of the note and for some time thereafter. That on the date of the maturity of the note Cook had on general deposit to his credit in the bank the sum of two hundred, fifteen dollars and sixty-six cents, and at various times thereafter had money to his credit in said bank. A copy of this bank account is attached to the special plea and shows that at several different times after the maturity of the note the said Cook had on deposit in the bank an amount in excess of the amount owed the bank on said note. That the bank went into liquidation on the 19th day of November, 1914, which was before the institution of this suit. That the defendant Moreland had no notice that this note had not been paid until after the bank went into liquidation. That the bank by virtue of having the money on deposit to the credit of the defendant Cook became a trustee of this money and held it as a trust fund, and that it was the duty of the bank to have appropriated these funds, or so much of them as was necessary to the payment of this note. That the note was made payable at the bank and was in its possession, which was tantamount to a draft on the bank to pay the same out of the funds on deposit to the credit of the said Cook. That the bank

114 Miss.—14

knew that Cook's account with it varied by overdrafts
for large amounts and that the said Cook was likely to
become wholly insolvent at any time and defeat any
contribution by the defendant. That, because of all
these reasons, it was the duty of the bank under the
circumstances to protect the defendant Moreland who
was a surety, and that, because of the alleged negligence
and bad faith in not so doing, the bank has relinquished
and released the defendant Moreland from any liability
on this note. The bank demurred to this special plea,
alleging in its demurrer: First, that the plea was not
sufficient to release the defendant Moreland; also, that
the plea shows affirmatively that the defendant Cook did
not have at the time of the maturity of the note a
sufficient sum on deposit with the plaintiff to liquidate
said note; and, further, that the plaintiff bank was never
under any legal obligation to apply any of the funds on
deposit with it to the credit of the said Cook to the
payment of the note sued on. This demurrer was sus-
tained by the court. There were also two other pleas
filed by the defendant to which demurrers were sustain-
ed. The defendant declining to plead further, judgment
was entered in favor of the bank for the amount due on
the note, from which judgment this appeal is prosecuted.

In this court the only error argued by the appellant
is the action of the court below in sustaining the demur-
rer to the special plea above mentioned. It is the
contention of the appellant that, while the note is signed
by Cook and Moreland on its face as comakers, as a
matter of fact, and one which the plea alleges, Moreland
was only a surety of Cook, and as such surety was
released when the bank failed to apply the amount to
Cook's credit on deposit in bank on the day the note
fell due to the payment of this note. It is the contention
of the appellee that the appellant Moreland is not a
surety but a principal on the note, and further that,
even if he be considered a surety, then he was not re-
leased by the failure of the bank to apply any amount

Cook might have had on deposit in the bank to this note on the day of, or after, its maturity.

It is not necessary for us to pass upon the question of whether or not the appellant Moreland was a principal or a surety, because we are of the opinion that, even if he be treated as a surety, he was not released from his liability on this note because of the failure of the bank to credit the note with any amount Cook may have had on deposit with it on the day of its maturity or thereafter. The decisions of the various states differ as to whether or not a bank is under any duty to a surety to credit a note at the day of, or after, its maturity with any amount the principal of said note may have on general deposit in the bank. A careful examination of the authorities on this question leads us to believe that the great weight of authority is to the effect that the bank is under no duty whatever to the surety to make any such application. A majority of the decisions holding the contrary view hold that at the time of the maturity of the note, if the principal of the note have on deposit an amount equal to or greater than that called for in the note, then it is the duty of the bank to apply a sum sufficient to pay the note in full; that, if it fails to do this, then the surety on said note is released. These cases further hold, however, that, if the amount on deposit the day of the maturity of the note is not sufficient to satisfy the note in full, then the bank is under no duty to the surety whatever to apply pro tanto to a credit on the note the amount on deposit in said bank at that time. There are a few states which hold that it is the duty of the bank to apply whatever amount it has on hand at the maturity of the note and also whatever amount it may have on deposit at a later date to a payment on the note.

It is well settled that the bank itself has a right, if it so desires, to apply whatever amount the maker of the note has on deposit with it to a payment on the note. Or, in other words, the bank itself has the right

to set off the amount it owes the depositor against the amount owed it by the depositor. The relation existing between a bank and a depositor is simply one of debtor and creditor. Most of the authorities holding that the surety is discharged in this character of cases predicate this right on the fact that the bank has this right of set-off if it so desires. As one court expressed it:

"When a creditor has in his hands the means of paying his debt out of the property of his principal debtor, and does not use it, but gives it up the surety is discharged."

Because the principal of the note has on deposit funds in the bank in no way gives the bank a lien on these funds for the payment of its note. If it did, then it would be the duty of the bank to hold all funds deposited there before the maturity of the note as well as those deposited at and after its maturity. As is well settled, by virtue of these deposits the relation only of debtor and creditor exists. This deposits is not treated as a trust fund or anything of that nature. The bank, by failing to credit the note with any amount due the principal, in no way releases any security which it holds or any valuable right of any kind to which the surety could be subrogated. It is a well-known fact in the commercial world that many customers of banks have balances to their general credit on deposit with the bank and at the same time owe the bank large sums of money for which they have given notes with sureties, falling due at different times. It would seriously interfere with the banking business and would be an injustice to the banks and to their depositors, if the bank, before cashing their checks, should always be compelled to consult their books and notes to see if any notes of these depositors were falling due on that date with sureties thereon, thereby to keep from releasing those sureties. On the other hand, it is the duty of the surety to know when the note of his principal falls due, and, if he so desire, to take proper steps to see that he

is protected at that time. In addition to whatever common-law remedies sureties have, they, have statutory remedies under chapter 112 of the Code of 1906.

In the case of *National Mahaiwe Bank* v. *Peck*, 127 Mass. 298, 34 Am. Rep. 368, the court said:

"Money deposited in a bank does not remain the property of the depositor, upon which the bank has a lien only; but it becomes the absolute property of the bank, and the bank is merely a debtor to the depositor in an equal amount. (Citing cases.) So long as the balance of account to the credit of the depositor exceeds the amount of any debts due and payable by him to the bank, the bank is bound to honor his checks, and liable to an action by him if it does not. When he owes to the bank independent debts, already due and payable, the bank has the right to apply the balance of his general account to the satisfaction of any such debts of his. But if the bank, instead of so applying the balance, sees fit to allow him to draw it out, neither the depositor nor any other person can afterwards insist that it should have been so applied. The bank, being the absolute owner of the money deposited, and being a mere debtor to the depositor for his balance of account, holds no property in which the depositor has any title or right of which a surety on an independent debt from him to the bank can avail himself by way of subrogation, as in *Baker* v. *Briggs*, 8 Pick, 122, 19 Am. Dec. 311, and *American Bank* v. *Baker*, 4 Metc. [Mass.] 164, cited for the defendant. The right of the bank to apply the balance of account to the satisfaction of such a debt is rather in the nature of a set-off, or of an application of payments, neither of which, in the absence of express agreement or appropriation, will be required by the law to be so made as to benefit the surety."

This idea has been very well expressed in the case of *People's Bank of Wilkes-Barre* v. *Legrand*, 103 Pa. 309, 49 Am. Rep. 126:

"While it is true that a bank is a mere debtor to its depositor for the amount of his deposit, and therefore, in an action by the bank against the depositor, on a note upon which he is liable, the latter may set off his deposit, yet we do not think the bank is bound to hold a deposit for the protection of an indorser of the depositor. A bank deposit is different from an .ordinary debt, in this, that from its very nature it is constantly subject to the check of the depositor, and is always payable on demand. The convenience of the commercial world, the enormous amount of transaction by means of bank checks, occurring on every business day in all parts of the country, require that the greatest facilities should be afforded for the use of bank deposits by means of checks drawn against them. The free use of checks for commercial purposes would be greatly impaired, if the banks could only honor them on peril of relieving indorsers, without an investigation of the state of the depositor's liabilities upon discounted paper .. . . It is beyond question that the bank, in the absence of any special appropriation of the deposit by the depositor, would have the right to apply a general deposit to the payment of any existing, matured indebtedness of the depositor. But that privilege is a right which the bank may or may not exercise in its discretion. . . . We fully recognize the rule that, where a principal creditor has the means of satisfaction actually or potentially within his grasp, he must retain them for the benefit of the surety; but we regard the case of bank deposits as an exception to the rule."

In the case of *First National Bank* v. *Peltz,* 176 Pa. 513, 35 Atl. 218, 36 L. R. A. 832, 53 Am. St. Rep. 686, in speaking of this same subject, the court uses the following language:

"While money deposited becomes the property. of the bank, yet that result flows from the nature of money, which is to be measured by amount and not by physical identity. Hence a deposit of one hundred dollars is re-

turned by another one hundred dollars without regard to the identity of the notes, or the coin, because legally they are the same. Except for this characteristic, a deposit of money to be returned on demand would be, like the deposit of any other article, a mere bailment. But though for this reason the title to money deposited passes to the bank, yet the whole business of banking is founded on the faith of the immediate availability of the deposit, as money, for the use of the depositor, and, any rule that interferred with the freedom of action of either bank or customer, by compelling a stop of their dealings with each other to examine the regulations of other parties to the deposit, would go far towards destroying that instant convertibility which is the essence of the business.''

This question was ably and exhaustively considered in the opinion of the court in the case of *Davenport* v. *State Banking Co.*, 126 Ga. 136, 54 S. E. 977, 8 L. R. A. (N. S.) 944, 115 Am. St. Rep. 68, 7 Ann. Cas. 1000, in which opinion all the leading authorities are reviewed and discussed. There are found in 115 Am. St. Rep. and 8 L. R. A. (N. S.) exhaustive notes to this case discussing and reviewing all of the authorities.

We therefore conclude that a bank does not owe a surety on a note the duty to apply, or credit, the note with any amount the principal may have on deposit in the bank at, or after the maturity of the note, whether or not this amount be sufficient to satisfy the note.

The appellant in his brief contends that, because of the allegations in his special plea to the effect that the defendant R. P. Cook was likely to become wholly insolvent at any time and defeat an action for contribution, then this is equivalent to charging that he was insolvent at the time of the maturity of the note, and that the bank knew of his insolvency, and because of this insolvency it was the duty of the bank to have applied whatever amount it owed Cook to this note. This is not an allegation of insolvency. This allegation

might be made of any one. It is therefore not necessary for us to consider the question of whether or not, if the defendant Cook had been insolvent at the time of the maturity of the note, and this fact had been known to the appellee bank, this would have made any difference in the duty of the bank.

The lower court was correct in sustaining the demurrer, and its judgment is therefore affirmed.

*Affirmed.*