In re the **WELLINGTON CONSTRUCTION CORPORATION, Debtor.**

**Jacob C. PONGETTI, Trustee for the Estate of the Wellington Construction Corporation, Plaintiff,**

v.

**NATIONAL BANK OF COMMERCE OF MISSISSIPPI, Defendant.**

Bankruptcy No. S82–10052.
Adv. No. 84–1051.

United States Bankruptcy Court,
N.D. Mississippi.

Aug. 10, 1987.

---

Jacob C. Pongetti, Columbus, Ohio, trustee.

Stephen C. Edds, Heidelberg, Woodliff & Franks, Towers, Jackson, Miss., for Nat. Bank of Commerce.

## OPINION

DAVID W. HOUSTON, III,
Bankruptcy Judge.

On consideration of the complaint filed by the Plaintiff, Jacob C. Pongetti, Trustee for the Estate of The Wellington Construction Corporation, hereinafter referred to as Plaintiff or Trustee; answer and affirmative defenses having been filed by the Defendant, National Bank of Commerce of Mississippi, hereinafter referred to as Defendant or NBC; all parties being represented before the Court by their respective attorneys of record; and the Court having received testimony, heard oral argument, and having received memoranda of law submitted by both the Plaintiff and the Defendant, hereby finds as follows, to-wit:

### I.

The Court has jurisdiction of the parties to and the subject matter of this proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(E) and (F).

### II.

### STATEMENT OF FACTS

The Wellington Construction Corporation, hereinafter referred to as Wellington or Debtor, established a line of credit with the Defendant NBC initially in August, 1979, in the sum of $200,000.00. This line of credit was secured by the personal guaranties of Wellington's principals, as well as, a certificate of deposit in the principal amount of $50,000.00, issued to The Wellington Construction Corporation. This certificate of deposit was renewed on several occasions, but at all times, the certificate was retained in the possession of the Defendant. To evidence this possession, the Defendant issued a custody receipt, dated September 4, 1979, which was delivered to Wellington and which contained the following language: "For securities held in safekeeping *as collateral* for the acct. of.....The Wellington Construction Corporation." (emphasis added) (See Exhibits D-4 and D-15.)

On June 17, 1981, Wellington executed a promissory note in favor of the Defendant which was payable on demand or within 90 days from the date of execution. The note recited that it was a renewal of a prior promissory note, and that the collateral

securing the indebtedness was "personal guaranties". In addition, on the face of the note was the following provision:

"Bank shall have a security interest in any monies or property at any time in possession of the Bank belonging to maker or any other party liable hereon and any deposits due by bank to maker or any other such party, all of which shall be treated as security for payment of this note. *Bank may, at its option in event of default, setoff such monies, property, or deposits against this note or any other obligation of Maker.*" (emphasis added)

The certificate of deposit was renewed on August 28, 1980, as evidenced by certificate no. 9162, issued in the principal amount of $52,404.64, bearing interest at the rate of 10.5% per annum, and maturing on February 26, 1981. (See Exhibit D–5.) The principal amount of this certificate apparently included interest that had accrued on an earlier certificate of deposit.

Wellington also maintained two checking accounts with NBC under numbers 02–9956–0 and 03–0263–8. The deposit agreements, applicable to these accounts, contained the following language:

"Bank is given the right, without notice, to charge against such account any indebtedness of us or any of us to the Bank, regardless of form or source of such debt."

The note, dated June 17, 1981, matured on September 14, 1981, 90 days from the date of its execution. Wellington defaulted in making the payment due under the note, so NBC mailed to Wellington a renewal promissory note, dated September 22, 1981, for execution in the identical principal sum of $200,000.00. This note was held by Wellington and not returned to NBC until October 30, 1981.

On October 15, 1981, because of Wellington's continued default in the payment of the June 17, 1981 note, as well as, the apparent refusal to return the September 22, 1981 note, NBC setoff the principal amount of the certificate of deposit plus all accrued interest, as well as, the balances in the two bank accounts. NBC calculated the setoff as follows:

| Certificate of deposit: | |
|---|---|
| Principal amount | $52,404.64 |
| Accrued interest from 8/28/80 through 10/15/81 | 6,555.28 |
| Value attributed to certificate of deposit | $58,959.92 |

Of the aforesaid amount, $46,138.00 was applied against the principal of the promissory note and the balance of $12,821.92 was applied against accrued interest. Following the application of the value of the certificate of deposit to the indebtedness, the principal balance remaining was the sum of $153,862.00.

Thereafter, the balances of the two checking accounts, in the total sum of $2,200.36, were setoff against the remaining principal amount, leaving a final balance owing of $151,661.64.

A recap of the setoff calculations is set forth as follows:

| Balance of 6/17/81 indebtedness as of 10/15/81 | | $212,821.92 |
|---|---|---|
| Less: | | |
| Value of certificate of deposit assigned to interest | $12,821.92 | |
| Value of certificate of deposit assigned to principal | 46,138.00 | |
| | | 58,959.92 |
| | | $153,862.00 |
| Less: | | |
| Account no. 02–9956–0 | $ 748.09 | |
| Account no. 03–0263–8 | 1,452.27 | |
| | | 2,200.36 |
| Principal balance remaining | | $151,661.64 |

Approximately two weeks later, Wellington returned the September 22, 1981 promissory note to NBC, executed in the principal sum of $200,000.00, as noted hereinabove. Since NBC had previously setoff the certificate of deposit and the two bank accounts, this promissory note was carried on the NBC bank records in the amount of $151,661.64. The maturity date of this promissory note was considered as December 21, 1981, 90 days from its date of execution.

At an unspecified time, NBC advised Wellington of the setoff, as well as, the remaining balance of the indebtedness. According to the testimony of Bobby Harper, the President of NBC's office in Co-

lumbus, Mississippi, the setoff transactions were accepted and ratified by the Wellington officials. There was no proof to the contrary.

A third promissory note was executed by Wellington in favor of NBC on December 21, 1981 in the principal sum of $151,-661.*21*, also payable on demand or within 90 days of the date of execution. (The nominal difference in this amount and the amount of the principal balance of the indebtedness was unexplained.) Evidencing Wellington's acquiescence of the setoff, this note was executed by the president of the corporation and returned to NBC on December 30, 1981, with the recitation that it renewed the earlier promissory note of September 22, 1981.

On February 4, 1982, 112 days after NBC had applied the proceeds of the certificate of deposit and the balances of the two checking accounts to the Wellington indebtedness, an involuntary petition in bankruptcy was filed against Wellington.

Thereafter, the Plaintiff Trustee filed his complaint against the Defendant seeking to recover the value of the certificate of deposit, as well as, the two checking accounts as voidable preferences pursuant to 11 U.S. C. § 547(b), or, in the alternative, demanding the turnover of the value of these properties pursuant to 11 U.S.C. § 542. At the conclusion of the trial, the Court advised the parties that that part of the Trustee's complaint alleging preferential transfers was not well taken in that the setoffs occurred more than 90 days prior to the filing of the involuntary bankruptcy petition, coupled with the total absence of proof that the Defendant was an insider to the Debtor as that term is defined in 11 U.S.C. § 101(25)(B). (This Code section, which was in effect at the time this case was filed, was the predecessor to 11 U.S.C. § 101(30)(B).)

The only issue that remains in dispute is whether NBC should be compelled to turnover the value of the certificate of deposit and the two bank accounts, setoff against the Wellington indebtedness, to the Trustee as properties of the bankruptcy estate. Several underlying questions must be answered in the resolution of this turnover issue, and each will be addressed hereinbelow.

## III.

## LEGAL ISSUES

The focal point of this case centers on whether NBC *had the right* to set off the value of the certificate of deposit and the two bank accounts against the Wellington indebtedness. In the Bankruptcy Code, setoff is addressed in 11 U.S.C. § 553(a) which provides as follows:

(a) Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case, except to the extent that–

(1) the claim of such creditor against the debtor is disallowed other than under section 502(b)(3) of this title;

(2) such claim was transferred, by an entity other than the debtor, to such creditor–

(A) after the commencement of the case; or

(B)(i) after 90 days before the date of the filing of the petition; and

(ii) while the debtor was insolvent; or

(3) the debt owed to the debtor by such creditor was incurred by such creditor–

(A) after 90 days before the date of the filing of the petition;

(B) while the debtor was insolvent; and

(C) for the purpose of obtaining a right of setoff against the debtor.

Since the setoff occurred more than 90 days prior to the filing of the involuntary bankruptcy petition, the first question that must be answered is whether there were mutual debts existing between NBC and Wellington. There are two underlying

factors which must be addressed in this context, to-wit:

a. Had the certificate of deposit matured at the time of the setoff?

b. Had NBC acquired legal rights in the certificate of deposit and bank accounts, such as a security interest or lien, that would permit setoff?

## IV.

█ In addressing question (a), the Court observes that the Trustee contends that certificate of deposit no. 9162 had not matured on the date of setoff, and that as such, any attempt at setoff was premature. If, in fact, the certificate of deposit had not matured, then the Trustee's position in this regard is absolutely correct. *See Matter of Hecht,* 41 B.R. 701, 702 (Bankr.S.D.N.Y. 1984). However, all the pertinent facts in this case must be analyzed to ascertain what actually did occur.

The certificate of deposit was dated August 28, 1980, with a term of 182 days, bearing interest at 10.5% per annum. Therefore, the stated maturity date for the instrument was February 26, 1981. In effecting the setoff, NBC applied interest to the Wellington indebtedness that accrued between the date of the certificate, August 28, 1980, and the date of setoff, October 15, 1981. This amounted to a credit against the debt in the sum of $6,555.28.

The Trustee takes the position that the certificate of deposit could not bear interest after its stated maturity date unless it was renewed for successive six month terms. In support of this position, the Trustee cites § 217.3(f) of Regulation "Q", 12 C.F.R. § 217.3(f) (1981), which prohibits the payment of interest on matured time deposits after the date of maturity. In response to this allegation, NBC admits that it may have violated § 217.3(f) of Regulation "Q", but that the benefactor was Wellington who received a larger credit against its debt. NBC strenuously denies that the certificate of deposit was automatically renewed after its maturity date, relying on an additional portion of § 217.3(f) which provides as follows:

On each certificate, passbook or other document representing a time deposit, the bank shall have printed or stamped a conspicuous statement indicating that no interest will be paid on the deposit after the maturity date or, in the case of a time deposit that is automatically renewable, a conspicuous statement indicating that the contract will be renewed automatically upon maturity, and indicating the terms of such renewal.

12 C.F.R. § 217.3(f) (1981).

In this case, the certificate of deposit provided that interest would *not* be paid after maturity. It contained *no* statement that it was automatically renewable. If the certificate were automatically renewable, as the Trustee contends, there should have been a clear indication on the face of the certificate that it was renewable, as well as, the specific conditions of renewability, i.e., the term, rate of interest, etc.

If the Trustee is to prevail on this point, he must convince this Court that certificate no. 9162 was automatically renewed for successive six month terms on at least two occasions, i.e., on February 26, 1981 and again on August 28, 1981. The custody receipt reflects that the last renewal was certificate of deposit no. 9162, issued on August 28, 1980. After this date, there was no other certificate issued and no modification of the certificate's terms. NBC was simply in error in applying interest, accruing after February 26, 1981, to the Wellington indebtedness when calculating the amount of setoff. Other than the fact that interest was erroneously added, there is no evidence of any description to support the Trustee's position that the certificate had not matured. As such, the Court, after carefully considering both sides of this question, concludes that the certificate of deposit matured on February 26, 1981, and was not renewed thereafter, regardless of the interest application.

## V.

In addressing question (b) hereinabove, the Court would first examine the nature of the obligation owed by Wellington to NBC as compared to the obligations, i.e.,

the certificate of deposit and the bank accounts, owed by NBC to Wellington. Clearly, all of these obligations arose prior to the filing of the Wellington involuntary bankruptcy petition. It is uncontradicted that Wellington had defaulted in the payment of the June 17, 1981 promissory note at the time that NBC effected the setoff of the certificate of deposit and the two bank accounts. Therefore, if NBC had a legal right to setoff, whether by virtue of a contractually created right or a perfected security interest, the obligations existing between NBC and Wellington would obviously be considered mutual. *See Moreland v. Peoples Bank of Waynesboro*, 114 Miss. 203, 74 So. 828 (1917); *Deposit Guaranty National Bank v. Simrall*, No. 56,469, slip op. at 9 (Miss. April 8, 1987).

■ The language appearing on the face of the promissory note executed by Wellington, contractually provides NBC with the right to "setoff such monies, property, or deposits against this note or any other obligation of maker." This Court is of the opinion that this provision is applicable not only to bank accounts, but to certificates of deposit. *See In re Applied Logic Corp.*, 576 F.2d 952 (2nd Cir.1978); *Bank of Crystal Springs v. First National Bank of Jackson*, 427 So.2d 968 (Miss.1983). Bolstering this contractual right of setoff is the fact that NBC retained possession of the certificate of deposit with Wellington's consent from the date of its issuance. The Court is convinced, therefore, that NBC enjoyed a right of setoff under state law, as well as, pursuant to 11 U.S.C. § 553(a). This conclusion is inescapable regardless of whether NBC held a perfected security interest in the certificate of deposit or the bank accounts.

### VI.

■ Although this proceeding could be decided as a result of the conclusion stated in the paragraph immediately preceding, the Court would hasten to add, in the alternative, a brief comment about the status of the security interest claimed by NBC. Having read the decisions of *In re Amex*

*Protein Development Corp.*, 504 F.2d 1056 (9th Cir.1974), and *Barton v. Chemical Bank*, 577 F.2d 1329 (5th Cir.1978), the Court is convinced that the language set forth on the face of the promissory note, coupled with NBC's retention of the certificate of deposit, afforded NBC a perfected security interest in the certificate of deposit, pursuant to Miss.Code Ann. §§ 75-9-304(1); 75-9-305 (1972).

The custody receipt corroborates the fact that both NBC and Wellington intended the certificate of deposit to be held as collateral. Although the Court recognizes that this instrument was never signed by Wellington, the original receipt was delivered to Wellington in September, 1979, more than two years before the date of setoff. There was not even a scintilla of evidence that Wellington objected to or resisted this arrangement. The Court is therefore constrained to find that a security interest was *created* by the language appearing on the promissory note and was *perfected* by the possession of the certificate by NBC. This conclusion opens yet another avenue for NBC to legally exercise its rights of setoff.

### VII.

■ The Trustee has complained that NBC did not provide Wellington with proper notice prior to setting off the certificate of deposit and the bank accounts against the indebtedness. Under the circumstances of this case, the Court is of the opinion that no notice is required. This conclusion is not inconsistent with the provisions of Miss.Code Ann. § 75-9-504 (1972). The certificate of deposit and the two bank accounts have a definite, ascertainable value, unlike stock certificates or tangible items of personal property which ordinarily are subject to market fluctuations and depreciation. Regardless of the extent of notice, the debtor could not have bettered its position "dollar wise". *See Barton v. Chemical Bank*, supra. In actuality, NBC gave Wellington more credit in calculating the setoff than it was legally permitted to do. Added to all of this is the undisputed fact that Wellington consented to the setoff, after the fact, more than once. The

Court is of the opinion that this part of the Trustee's complaint is without merit.

## VIII.

### CONCLUSION

For the reasons set forth in this opinion, the Court finds that the Trustee's complaint should be dismissed with prejudice. A separate Order will be entered contemporaneously herewith.