THOMAS, J.,
for the Court.
¶ 1. Arline Jetton brought suit against Union Planters Bank for conversion of monies which were in possession of the bank because Ms. Jetton had purchased certificates of deposit from the bank which also included the names of her two sons as joint owners. She was awarded $109,649.10 plus pre-judgment interest as well as attorney’s fees in the amount of $27,777.61. Aggrieved Union Planters asserts the following:
I. AS A MATTER OF LAW, UNION PLANTERS HELD A CONTRACTUAL RIGHT OF SETOFF BY VIRTUE OF THE PROVISIONS IN THE CERTIFICATES OF DEPOSIT AND PROMISSORY NOTE.
II. THE COURT ERRED BY ALLOWING, OVER OBJECTION, PAROL EVIDENCE TO ALTER THE CONTRACT CREATING A JOINT TENANCY.
III. MS. JETTON, WAYNE AND JIM FAILED TO READ THE CONTRACTS; THE ACCOUNT WAS A GENERAL ACCOUNT SUBJECT TO CONTRACTUAL SETOFF.
IV. CONTRARY TO THE CHANCELLOR’S DECISION, THE BANK DID NOT HOLD ITSELF OUT AS AN “EXPERT” IN INVESTMENTS.
V. THE COURT ERRED IN AWARDING ATTORNEY’S FEES AND COSTS.
FACTS
¶ 2. In 1995 Arline Jetton purchased two $70,000 certificates of deposit and one $10,000 certificate of deposit from South-trust Bank which were subsequently acquired by Union Planters Bank, hereafter referred to as UPB, when UPB bought Southtrust. Accompanying Ms. Jetton were her two sons, Jim and Wayne. Ms. Jetton’s husband had recently passed away and she wanted to be sure her sons could take care of her if need be, so she brought them with her and put their names on the certificates of deposit as joint owners. The interest payment from the CD’s came directly to her pursuant to her request, which was signed by all parties.
*676 ¶ 3. On September 3, 1996, Wayne executed a promissory note in favor of UPB in the amount of $247,044, due and payable on November 10, 1996. The loan was secured by a contemporaneous deed of trust on a “spec” home in the Grand Oaks subdivision in Oxford. After granting a number of requested extensions and after numerous requests to pay the loan, UPB was forced to begin foreclosure proceedings against Wayne. UPB suggested pledging real property known as Patio Gardens Apartments to allow UPB to extend Wayne’s loan even further. Wayne verbally agreed to do this, but just two days later deeded both Patio Gardens and his home to his wife. When asked about this at trial Wayne testified, “I did not want the bank to take them.” UPB was forced to foreclose on the security interest which left a deficiency in the amount of $109,649.10. UPB executed its right to setoff against the certificates of deposit, leaving a balance of $40,350.90. A bank draft in that amount was made payable to Ms. Jetton, Wayne and Jim.
¶ 4. The effect of the joint tenancy was not orally explained to Ms. Jetton, but was plainly apparent in the contract signed by Ms. Jetton. The terms of the original certificate of deposit contracts, as well as numerous renewals, contained standard setoff provisions outlined in bold print, RIGHT OF SETOFF, on the first page of the certificate of deposit.
¶ 5. When questioned at trial about the verbal statements made prior to the written contract, counsel for UPB objected, citing the parol evidence rule. The chancellor ruled that the testimony was allowed because, “Chancery Court is a court of equity, I sit as judge and jury. I’m going to let her answer it for what it is worth. I know that I was a guardian of a man here in Lafayette County, a disabled war veteran, and I had heck with banks with his funds, he had close to half a million dollars. They kept putting him and me down as joint tenants on the CD’s.” He further explained, “I am going to let her testify as to what her conversation was with the bank at the time that she purchased the CD.”
¶ 6. On direct examination the following exchange occurred between Ms. Jetton and her attorney:
Q. I understand that you have said you asked the people at the bank to set this CD up so that your sons could have access to the money to use it for your benefit, is that what I understand you have said?
A. Well, if need be. Yeah.
Q. I notice that the certificate of deposit is made Arline Jetton or Wayne Estes or Jim Estes. Was there any discussion at the bank as to what the way they set this up meant?
A. No discussion
¶ 7. Ms. Jetton further testified that if she would have known that the bank could set off debts of Jim’s or Wayne’s then she never would have bought the CD. She testified that her sons had a power of attorney allowing them to handle her business which made the joint ownership unnecessary. The bank was never informed of a power of attorney.
ANALYSIS
¶ 8. We must determined if there was any evidence to justify a holding that UPB had a fiduciary relationship with Ms. Jet-ton which in effect would hold UPB responsible for Ms. Jetton’s actions regarding her investments with the bank.
¶ 9. Our standard of review with this issue, again, allows that we only disturb the chancellor’s findings if we find manifest error, abuse of discretion, or that the court applied an erroneous legal standard. *677 Andrews v. Williams, 723 So.2d 1175(¶ 7) (Miss.Ct.App.1998).
¶ 10. A fiduciary relationship does not automatically exist in a commercial loan transaction. See, e.g., Hopewell Enters., Inc. v. Trustmark Nat’l Bank, 680 So.2d 812, 816 (Miss.1996); Peoples Bank & Trust Co. v. Cermack, 658 So.2d 1352, 1358 (Miss.1995) (overruled on other grounds). The party asserting the existence of a fiduciary relationship bears the burden of proving its existence by clear and convincing evidence. Smith v. Franklin Custodian Funds, Inc., 726 So.2d 144, 150(¶ 28) (Miss.1998). The Mississippi Supreme Court has provided a three-part test for determining whether a fiduciary relationship exists in a commercial transaction: whether (1) the parties have shared goals in each other’s commercial activities, (2) one of the parties places justifiable confidence or trust in the other party’s fidelity, and (3) the trusted party exercises effective control over the other party. AmSouth Bank v. Gupta, 838 So.2d 205, 216(¶ 32) (Miss.2002).
¶ 11. There has been a refusal to recognize the existence of a fiduciary relationship in cases where the relationship between the two parties was no more than “an arms-length business transaction involving a normal debtor-creditor relationship.” Merchants & Planters Bank of Raymond v. Williamson, 691 So.2d 398, 404 (Miss.1997). A fiduciary relationship “arises only if the activities of both parties goes beyond their operating on their own behalf and the activity is for the benefit of both.” Carter Equip. Co. v. John Deere Indus. Equip. Co., 681 F.2d 386, 391 (5th Cir.1982); Burgess v. Bankplus, 830 So.2d 1223, 1227(¶ 7) (Miss.2002).
¶ 12. Ms. Jetton’s claim and reliance on a bank’s fiduciary duty under these circumstances is unfounded by facts or law. There were no previous dealings with the bank, this was nothing more than a normal eustomer/bank transaction and there was no reason for Ms. Jetton to have justification in a belief that UPB owed her some heightened duty beyond that of any other bank and customer under the same circumstances.
¶ 13. To recover for fraud or mistake, “the circumstances constituting fraud or mistake shall be stated with particularity.” M.R.C.P. 9(b). To establish fraud, “there must be a representation of the falsity thereof, the materiality of the false representations, the speaker’s intent that it be acted on by the other in the anticipated manner, the hearer’s ignorance of its falsity, his reliance on its truth, his right to rely thereon, and his consequent and proximate injury.” McMahon v. McMahon, 247 Miss. 822, 836, 157 So.2d 494, 501 (1963); see also M.R.C.P. 9(b) cmt.; Burgess v. Bankplus, 830 So.2d 1223, 1228(¶ 9) (Miss.2002).
¶ 14. There has not been any evidence presented of any fraud on the part of UPB; the chancellor so found. In the Appellee’s brief and testimony at trial, the assertion was made that Wayne had acquired the liability of his loan with UPB prior to Ms. Jetton’s certificates of deposit purchase and that this somehow gave rise to an intent on the part of UPB to possibly access Ms. Jetton’s account. This was not true. Wayne’s loan was not procured until some eighteen months after the initial purchase of the certificates. Furthermore, it was secured with separate collateral. Wayne subsequently, in an effort to defraud UPB, changed the ownership of other properties from his name to his wife’s name in an attempt to make the bank’s endeavor to collect a deficiency against him futile.
*678 ¶ 15. Under Mississippi law, where the contract is not ambiguous, the intention of the contracting parties should be gleaned solely from the wording of the contract. Heritage Cablevision v. New Albany Elec. Power Sys., 646 So.2d 1305, 1312 (Miss.1994). Parol evidence will not be received to vary or alter the terms of a written agreement that is intended to express the entire agreement of the parties on the subject matter at hand. Turner v. Terry, 799 So.2d 25, 32 (¶ 16) (Miss.2001); Grenada Auto Co. v. Waldrop, 188 Miss. 468, 195 So. 491, 492 (1940). A “court is obligated to enforce a contract executed by legally competent parties where the terms of the contract are clear and unambiguous.” Merchants & Farmers Bank v. State ex rel. Moore, 651 So.2d 1060, 1061 (Miss.1995). As stated in Delta Pride Catfish, Inc. v. Home Ins. Co., 697 So.2d 400, 404 (Miss.1997), the parties are bound by the language of the contract where a contract is unambiguous. We are “concerned with what the contracting parties have said to each other, not some secret thought of one [that was] not communicated to the other.” Mississippi State Highway Com’n v. Patterson Enterprises Ltd., 627 So.2d 261, 263 (Miss.1993). “While a valid contract may be reformed where a mistake has been made, the general rule is that reformation is justified only if the mistake is a mutual one, or where one party made a mistake and the other party committed fraud or inequitable conduct.” Palmere v. Curtis, 789 So.2d 126, 131(¶ 12) (Miss.Ct.App.2001) (citing Ivison v. Ivison, 762 So.2d 329, 335-36 (¶21) (Miss.2000)). However, “[t]he mistake that will justify a reformation must be in the drafting of the instrument, not in the making of the contract.” Id. (quoting Johnson v. Consolidated Am. Life Ins. Co., 244 So .2d 400, 402 (Miss.1971)). Parol evidence is admissible to show that the making of a written contract was procured by fraudulent representations. Turner v. Terry, 799 So.2d 25, 33-34 (¶ 25) (Miss.2001). It impeaches the written contract. Id. Its purpose is to show that there was no valid, written contract, and a provision in a written contract that it contains all the stipulations entered into by the parties does not add anything to its strength. Turner v. Terry, 799 So.2d 25, 33-34 (¶25) (Miss.2001); Nash Miss. Valley Motor Co. v. Childress, 156 Miss. 157, 125 So. 708, 709 (1930).
¶ 16. The chancellor found that the bank did not commit fraud. Since fraud is not found to be present then the unambiguous meaning of the contract cannot be disturbed. The chancellor opined that the facts of the case demand that equity be done, but it would be inequitable to hold UPB to a standard not allowed by law and to provide safe haven for individuals unwilling to read a contract before they sign it. Ms. Jetton asked for a certificate of deposit which her sons would have access to and that is what she got.
¶ 17. The “set-off’ principle gives financial institutions the ability to apply a debtor’s deposit to payment of his debt then due. Simrall, 524 So.2d at 299-300. The Mississippi Supreme Court stated in Moreland v. People’s Bank: “It is well settled that the bank itself has a right, if it so desires, to apply whatever amount the maker of the note has on deposit with it to a payment on the note.” Collums ex rel. Collums v. Union Planters Bank, N.A., 832 So.2d 572, 576-577(¶ 11) (Miss.Ct.App.2002) (citing Moreland v. People’s Bank, 114 Miss. 203, 211-12, 74 So. 828, 829-30 (1917)). Or, in other words, the bank itself has the right to set off the amount it owes the depositor against the amount owed it by the depositor. Id. The relation existing between a bank and a depositor is simply one of debtor and creditor. Moreland, 114 Miss. at 211-12, 74 So. at 829-30. As such, the bank was not *679 at fault by closing the account and applying the balance to the overdue note. UPB exercised its right to setoff debts in accordance with the law of this State.
¶ 18. The lower court’s holding in this case is not consistent with the law in Mississippi. A contract was written and signed with no ambiguity as to the meaning of the terms, no fraud and no extra duty on any party. At no time did the bank act with nefarious intentions or tactics. We are compelled to reverse and render. We necessarily in turn vacate the award of attorney’s fees.
¶ 19. THE JUDGMENT OF THE CHANCERY COURT OF LAFAYETTE COUNTY IS REVERSED AND RENDERED. COSTS ARE TAXED AGAINST THE APPELLEE.
KING AND SOUTHWICK, P JJ., BRIDGES, LEE, IRVING, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR. McMILLIN, C.J., NOT PARTICIPATING.