**Ida Mae BOOKER, et al.**

v.

**AMERICAN GENERAL LIFE AND ACCIDENT INSURANCE COMPANY, et al.**

**No. CIV.A.3:02–CV–1653BN.**

United States District Court, S.D. Mississippi, Jackson Division.

April 15, 2003.

Don John W. Barrett, Barrett Law Offices, Lexington, MS, Michael D. Hickman, Taylor, Martino & Hedge, P.C., Mobile, AL, for Ida Mae Booker, Denise Boyd, Dennis Cage, Mary Cage, Mamie Gooden, Elizabeth Green, Frances Hayes, Irene Smith, Louis Smith, Carrilla Stallings, Chandra Winters, plaintiffs.

Michael Douglas Mulvaney, Thomas Julian Butler, Edward M. Holt, Maynard, Cooper & Gales, PC, Birmingham, AL, for american General Life and Acc. Ins. Co., defendant.

Robert M. Frey, Malissa Wilson, Butler, Snow, O'Mara, Stevens & Cannada, Jackson, for Mitchell Acey, Cascille Baker, Carl Bloomquist, Jerry Chandler, Earline Christopher, Wallace Cunningham, Franklin Floyd, Lanny Haley, Sr., Benjamin May, Laney O'Briant, Wyomman A. Reeves, Jr., William Robinson, Willie Spells, Norman Stafford, Candice Swindle, Danny Tharp, John Does, A–Z the person, firm, or legal entity who sold or serviced the policies made the basis of this suit to the plaintiffs, all of whose true names are otherwise unknown at this time, but will be added by amendment when ascertianed, individually and jointly, defendants.

## OPINION AND ORDER

BARBOUR, District Judge.

Before the Court is the Motion of Plaintiffs to Remand.[1] Having considered the Motion, Response, Rebuttal, attachments to each, and supporting and opposing authority, the Court finds that the Motion is not well taken and should be denied.

---

1. On November 15, 2002, Judge Lee granted the Motion of Defendants to Consolidate this action with the previously filed case number 3:02–CV–1235BN, involving similar claims against the same Defendants. On February 2, 2003, the undersigned issued an Order ending the consolidation of the two actions, reassigning their original case numbers, and keeping both actions separately before the undersigned.

## I. BACKGROUND AND PROCEDURAL HISTORY

Each Plaintiff purchased a life insurance policy issued by American General Life and Accident Insurance Company ("American General"). In conjunction with the purchase of the policies, each Plaintiff paid a separate premium for a waiver of premium benefit provision, which provided that in the event that the insured becomes disabled, payment of future premiums shall be waived upon the receipt by the insurer of proof of disability. The waiver of premium includes an exclusion whereby premiums are not waived if the insured was disabled when the policy was issued, or if the insured becomes disabled while the benefit is not in force, or if the insured becomes disabled due to preexisting conditions.

Plaintiffs have sued American General and several individual agents of American General ("Agent Defendants"), alleging that Defendants have collected premiums from them in violation of the premium waiver benefit. Some Plaintiffs allege that they were disabled when they purchased their policies, so that they have been paying premiums for a benefit for which they were ineligible because of the policy exclusion. Other Plaintiffs allege that they became disabled after they purchased their policies, that they were entitled to have their future premiums waived, but that Defendants continued to require the payment of premiums. Plaintiffs further allege that the Agent Defendants either knew that Plaintiffs were disabled when they purchased their policies, or knew that Plaintiffs became disabled after their policies were issued. Plaintiffs further allege that despite knowledge of the Plaintiffs' disabilities, the Agent Defendants collected premium payments from Plaintiffs on a monthly basis.

Plaintiffs seek to hold Defendants liable for breach of fiduciary duty, fraudulent misrepresentation, and fraud by suppression and/or concealment. Plaintiffs who were disabled when they purchased their policies allege that the Agent Defendants failed to disclose that Plaintiffs were paying premiums for a benefit that would not be honored because of a policy exclusion. Plaintiffs who became disabled after their policies were issued allege that the Agent Defendants failed to disclose that Plaintiffs could invoke the premium waiver benefit. All Plaintiffs also claim that the Agent Defendants represented to them each month when they collected the premium payments that Plaintiffs must continue to make their premium payments to keep the policies in force. In summary, Plaintiffs allege that Defendants wrongfully charged and collected unnecessary payments of premiums from them.

All Plaintiffs to this suit are citizens of the State of Mississippi. Plaintiffs have brought suit against American General, which is a corporate citizen of a state other than Mississippi, and against several individual Agent Defendants, who are each citizens of the State of Mississippi. The amount in controversy exceeds $75,000. Defendants have removed the suit to this Court on the basis of diversity jurisdiction, arguing that Plaintiffs have fraudulently joined the Agent Defendants in order to defeat diversity jurisdiction, and also arguing that the claims against the Agent Defendants have been misjoined with the claims against American General. Plaintiffs have filed the present Motion to Remand, arguing that they have stated valid claims under Mississippi law against the non-diverse individual Agent Defendants.

## II. FRAUDULENT JOINDER STANDARD

Under 28 U.S.C. § 1441(a), "any civil action brought in a State court of

which the district courts of the United States have original jurisdiction, may be removed ... to the district court of the United States for the district and division embracing the place where such action is pending." The removing party has the burden of proving that the federal court has jurisdiction to hear the case. *See Jernigan v. Ashland Oil, Inc.*, 989 F.2d 812, 815 (5th Cir.1993), *cert. denied*, 510 U.S. 868, 114 S.Ct. 192, 126 L.Ed.2d 150 (1993); *Laughlin v. Prudential Ins. Co.*, 882 F.2d 187, 190 (5th Cir.1989) (holding that the "removing party bears the burden of establishing federal jurisdiction."). In cases in which the removing party alleges diversity of citizenship jurisdiction on the basis of fraudulent joinder, "it has the burden of proving the fraud." *Laughlin*, 882 F.2d at 190; *Carriere v. Sears, Roebuck & Co.*, 893 F.2d 98, 100 (5th Cir.1990), *cert. denied* 498 U.S. 817, 111 S.Ct. 60, 112 L.Ed.2d 35 (1990). To establish fraudulent joinder, the removing party must prove: (1) that there was actual fraud in the plaintiff's pleading of the jurisdictional facts or (2) that the plaintiff has no possibility of establishing a cause of action against the non-diverse defendant in state court. *Griggs v. State Farm Lloyds*, 181 F.3d 694, 699 (5th Cir.1999) (citations omitted); *Burden v. General Dynamics Corp.*, 60 F.3d 213, 217 (5th Cir.1995); *Cavallini v. State Farm Mutual Auto Ins. Co.*, 44 F.3d 256, 259 (5th Cir.1995).

■ When considering whether a non-diverse defendant has been fraudulently joined to defeat diversity of citizenship jurisdiction, courts should "pierce the pleadings" and consider "summary judgment-type evidence such as affidavits and deposition testimony." *See e.g. Cavallini*, 44 F.3d at 256. *See also LeJeune v. Shell Oil Co.*, 950 F.2d 267, 271 (5th Cir.1992) (holding that "a removing party's claim of fraudulent joinder to destroy diversity is viewed as similar to a motion for summary judgment.... A court is to pierce the

pleadings to determine whether, under controlling state law, the non-removing party has a valid claim against the non-diverse parties."). Under this standard, plaintiffs "may not rest upon the mere allegations or denials of [their] pleadings." *Beck v. Texas State Bd. of Dental Examiners*, 204 F.3d 629, 633 (5th Cir.2000). *See also Badon v. RJR Nabisco, Inc.*, 236 F.3d 282, 286 n. 4 (5th Cir.2000) (finding that the "mere theoretical possibility of recovery under local law" does not preclude removal. "[T]here must at least be arguably a reasonable basis for predicting that state law would allow recovery in order to preclude a finding of fraudulent joinder."). Further, conclusory or generic allegations of wrongdoing on the part of the non-diverse defendant are not sufficient to show that the defendant was not fraudulently joined. *See Badon v. RJR Nabisco, Inc.*, 224 F.3d 382, 392–93 (5th Cir.2000); *Peters v. Metropolitan Life Ins. Co.*, 164 F.Supp.2d 830, 834 (S.D.Miss. 2001) (J. Bramlette) (holding that the allegations against non-diverse defendants "must be factual, not conclusory, because conclusory allegations do not state a claim."). Therefore, removal is not precluded merely because the state court complaint, on its face, sets forth a state law claim against a non-diverse defendant. *See Badon*, 224 F.3d at 390. Removal is proper "if the plaintiff's pleading is pierced and it is shown that as a matter of law there is no reasonable basis for predicting that the plaintiff might establish liability on that claim against the in-state defendant." *Id.*

■ When conducting a fraudulent joinder analysis, a court must resolve all disputed questions of fact and ambiguities of law in favor of the non-removing party, *see Dodson v. Spiliada Maritime Corp.*, 951 F.2d 40, 42 (5th Cir.1992), but *"only when there exists an actual controversy,*

i.e. when *both* parties have submitted *evidence* of contradictory facts." *Badon,* 224 F.3d at 394 (alteration in original). A court should not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts" to support his claims against the non-diverse defendant. *Id.* (citing *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994)). In the event the court, after resolving all disputed questions of fact and ambiguities of law in favor of the non-removing party, finds that there is "arguably a reasonable basis for predicting that the state law might impose liability on the facts involved, then there is no fraudulent joinder" and hence no basis for asserting diversity of citizenship jurisdiction. *Jernigan,* 989 F.2d at 816.

### III. ANALYSIS

Although Plaintiffs have asserted several theories of recovery, the Motion to Remand focuses only on whether Plaintiffs have stated a valid claim of breach of fiduciary duty. Additionally, the Rebuttal in Support of the Motion to Remand briefly discusses the claim for fraud by suppression or concealment. Plaintiffs need only establish an arguably reasonable basis for predicting that state law might impose liability on a single claim against a single non-diverse Defendant in order to defeat diversity.

### A. STATUTE OF LIMITATIONS

The parties agree that the general three-year statute of limitations applies to the claims of Plaintiffs here. *See Howard v. CitiFinancial, Inc.,* 195 F.Supp.2d 811, 820 (S.D.Miss.2002). The parties disagree as to when some of the various Plaintiffs' causes of action accrued. Defendants argue that each Plaintiff's cause of action accrued on the date that he purchased his policy. Plaintiffs argue that each wrongful collection of a premium constitutes a separate and repeated injury, so that each cause of action accrues on the date of the last injury. *See Smith v. Franklin Custodian Funds, Inc.,* 726 So.2d 144, 148 (Miss. 1998).

Regardless, at least one Plaintiff purchased her policy within the three-year statute of limitation period without applying any exception. Elizabeth Green purchased her policy on March 15, 2000, and filed suit on October 7, 2002. Thus, at least one Plaintiff has stated a claim which is not time-barred.

### B. BREACH OF FIDUCIARY DUTY

The Mississippi Supreme Court has stated that

A fiduciary duty must exist before a breach of the duty can occur. "Fiduciary relationship" is a very broad term embracing both technical fiduciary relations and those informal relations which exist wherever one person trusts in or relies upon another. A fiduciary relationship may arise in a legal, moral, domestic, or personal context, where there appears "on the one side an overmastering influence or, on the other, weakness, dependence, or trust, justifiably reposed." Additionally, a confidential relationship, which imposes a duty similar to a fiduciary relationship, may arise when one party justifiably imposes special trust and confidence in another, so that the first party relaxes the care and vigilance that he would normally exercise in entering into a transaction with a stranger.

*Lowery v. Guaranty Bank & Trust Co.,* 592 So.2d 79, 83 (Miss.1991) (citations omitted)(finding that a question of fact existed as to whether a fiduciary relationship existed between insurance agent and insured); *see also First United Bank of Poplarville v. Reid,* 612 So.2d 1131, 1138 (Miss.1992) ("a particular fact pattern...[may] create[ ] a fiduciary relation-

ship between lender/insurance agent and borrower/insured").

The United States Court of Appeals for the Fifth Circuit further explained that before the law will recognize the creation of a confidential relationship, *Lowery* requires "that there must be something about the relationship between the parties which would justifiably create an expectation on the part of one party that the other was protecting the first party from the occurrence of a particular risk; and, moreover, such justifiable reliance must have necessarily caused the first party to be lulled into a false sense of security so that the first party did not protect his own interest as he might have ordinarily." *Deramus v. Jackson Nat. Life Ins. Co.,* 92 F.3d 274, 278 (5th Cir.1996).

■ "In Mississippi, the purchase of insurance is deemed to be an arms' length transaction." *Langston v. Bigelow,* 820 So.2d 752, 756 (Miss.App.2002). Thus, "[u]nder Mississippi law, there is no fiduciary relationship or duty between an insurance company and its insured in a first party insurance contract." *Gorman v. Southeastern Fidelity Ins. Co.,* 621 F.Supp. 33, 38 (S.D.Miss.1985)(Russell, J.), *aff'd* 775 F.2d 655 (5th Cir.1985).

Courts have often found that a fiduciary relationship does not exist between an insurer and insured, or between the agent of the insurer and insured, in the context of first-party contracts. *See, e.g., Bass v. California Life Ins. Co.,* 581 So.2d 1087, 1090 (Miss.1991) (In evaluating the value of an insurance claim, an adjuster's duty runs to the insurer, not the insured), *Burley v. Homeowners Warranty Corp.,* 773 F.Supp. 844, 860 (S.D.Miss.1990)(Lee, J.)("there is no fiduciary relationship between an insurer and insured in a first-party contract"), *Howard v. CitiFinancial, Inc.,* 195 F.Supp.2d at 823 (same).

■ Plaintiffs concede that Mississippi law does not recognize a fiduciary relation-ship between insurer and insured in a first-party contract where the insured makes a claim for benefits. Plaintiffs explain that the rationale behind the law is that the insured in such a circumstance "necessarily takes a position antagonistic to the insurer and must expect to deal with it at arm's length." *See Gorman v. Southeastern Fidelity,* 621 F.Supp. at 38 (citing *Walsh v. Campbell,* 130 Ga.App. 194, 202 S.E.2d 657 (1973)). However, Plaintiffs argue that other state and federal decisions recognize that a fiduciary relationship can arise between an insurance agent and an insured in circumstances such as those present here.

Plaintiffs acknowledge several decisions finding that no fiduciary relationship existed between an insurance agent and the insured. *See, e.g., Ross v. CitiFinancial, Inc.,* 2002 WL 461567 (S.D.Miss.2002), *Howard v. CitiFinancial, Inc.,* 195 F.Supp.2d 811 (S.D.Miss.2002), *Strong v. First Family Financial Services, Inc.,* 202 F.Supp.2d 536 (S.D.Miss.2002). Plaintiffs note that *Ross, Howard,* and *Strong* all base their findings on the lack of evidence in the record. Plaintiffs argue that such findings necessarily imply that a fiduciary relationship could be found to exist, given the proper factual support.

Plaintiffs further cite several decisions that expressly indicate that a fiduciary relationship can exist between an insurance agent and an insured under Mississippi law. In *Lowery v. Guaranty Bank & Trust Co.,* plaintiffs sued a bank and its agent for a breach of its fiduciary duty to notify them that an insurance policy had terminated. The record indicated that an agent of the lender handled all the family business, had twice extended bank notes without any formal application, and had counseled the family regarding financial and insurance matters in the past. 592 So.2d at 85. The record further indicated

that the plaintiff had informed the agent that payment would not be on time, in a manner consistent with the two previous note extensions. Although the agent did not indicate that the note would be extended or renewed, the Mississippi Supreme Court found that the history between the plaintiff and the agent could have created a "relationship [whereby the Lowery's placed] trust and confidence in Guaranty Bank to the point of being less vigilant about the coverage of the credit life insurance than they had been in the past. If that were the case, the bank owed them a duty to notify them that the credit life insurance had lapsed and that it would not be in force while they waited on Mr. Lowery to return." *Id.* The court found that a question of fact existed regarding whether the lender had a fiduciary duty to notify the borrower of the expiration of the credit life insurance policy. *Id.*

Plaintiffs also direct the Court to the decision of the Mississippi Supreme Court in *Ross–King Walker, Inc. v. Henson,* 672 So.2d 1188 (Miss.1996). There, plaintiffs sued their insurance company for its failure to disclose that the plaintiffs' policy included workers' compensation death benefits coverage. 672 So.2d at 1190. One of the claims asserted by plaintiffs was that the insurer had breached its fiduciary duties by denying the existence of the coverage. *Id.* The record in *Henson* indicated that the plaintiffs relied on the insurer to tend to their insurance needs, that the insurers had handled claims and certificates of insurance for plaintiffs' clients, that plaintiffs were not knowledgeable about the insurance aspects of their business, and that although plaintiffs had signed some insurance forms, plaintiffs had never filled in the actual information on the forms, relying instead on agents of the insurer. *Id.* at 1191. In upholding a jury verdict against the insurer that included an award of punitive damages, the Mississippi Supreme Court noted that the

"jury could have found that [the insurer] breached a fiduciary relationship-regardless of whether [the plaintiffs] believed [the insurer] or not." *Id.*

The Mississippi Supreme Court has found that a fiduciary relationship was created between a bank and its customer where the bank essentially became an insurance agent for the procurement of credit life insurance for the customer through a practice of offering credit life insurance to the customer in conjunction with making loans and subsequent extensions thereof. *See First United Bank of Poplarville v. Reid,* 612 So.2d 1131 (Miss.1992).

The Mississippi Supreme Court has also found that a bank and an insurance company, acting as agents on behalf of each other, had a fiduciary duty to their customer to whom they had extended loans and sold insurance thereon. *See American Bankers Insurance Co. of Florida v. Alexander,* 818 So.2d 1073 (Miss.2001). The duty found in *Alexander* was found to have been breached when the insurance company and bank failed to inform their customer about a profit sharing scheme between the two. *Id.* at 1085. In finding the existence of a fiduciary relationship, the court noted that the bank and insurance company were in strong financial positions, whereas their customer lacked sophistication and knowledge in the area. *Id.* The court stated that these disparities in knowledge and strength made the customer dependent on the bank and insurance company, so that the customer could justifiably repose his trust in them. *Id.*

Plaintiffs argue that the circumstances present here supply the indices of trust and dependence contemplated under the law of Mississippi as stated in *Lowery v. Guaranty Bank,* and as interpreted in the cases discussed above. Specifically, Plaintiffs direct the Court to the following portions of their Complaint as establishing a

factual context sufficient to create a fiduciary relationship between the Agent Defendants and Plaintiffs:

56. At all material times herein, the Defendants held themselves out to the Plaintiffs as highly knowledgeable with respect to insurance matters. The Plaintiffs, as well as the insureds under the respective policies, were in a weak financial position and had a lack of sophistication and knowledge relative to insurance matters, and therefore justifiably reposed trust in and dependence upon the Individual Defendants to properly advise them on financial and insurance matters related to the purchase of insurance products, including those policies identified herein, and further to properly advise them with respect to the payment of premiums on said policies, including whether the Plaintiffs should continue to pay the premiums due under the policies in light of their disabilities. The Individual Defendants accepted the trust and dependence placed in them by the Plaintiffs, and in so doing, undertook to properly advise the Plaintiffs on financial and insurance matters related to the sale and servicing of, and premium payments for, the insurance products sold to the Plaintiffs, including the policies of insurance identified herein. As a result of the matters previously alleged, the Individual Defendants exerted a dominant influence over the Plaintiffs with regard to said insurance matters, and the Plaintiffs justifiably expected that the Individual Defendants would deal with them fairly and in good faith relative to said insurance matters.

. . . . .

60. The Plaintiffs were not told that their policies, made the basis of this suit, contained a Waiver of Premium Benefit, nor were they told that the amount of premiums payable for said policies included, in part, an amount attributable towards the purchase of this particular provision. Plaintiffs were excused from reading their policies made the basis of this action, and were not charged with knowledge of the contents of said policies, due to the fiduciary relationship which existed between the Defendants and the Plaintiffs as previously described. Due to this fiduciary relationship, Plaintiffs were entitled to rely, and did reasonably rely, on the Individual Defendants to advise them of the contents of said policies. Moreover, due to the fiduciary relationship between the Defendants and Plaintiffs, Plaintiffs were entitled to rely, and did reasonably rely, upon the Individual Defendants' representations as set out hereinafter that the policy premiums must be paid to keep the policies in force, which said representations were made after the Plaintiffs (or the insureds under the policies) had become disabled.

. . . . .

65. The insurance policies sold to the Plaintiffs involved contracts of adhesion that were prepared by the Corporate Defendants and were not subject to negotiation. Plaintiffs are unsophisticated consumers, ill-equipped to understand the technical language used in connection with such insurance policies. During the solicitation and servicing of the Plaintiffs' policies, the Defendants and the Corporate Defendants' agents, some of whom are named as Individual Defendants herein, held themselves out as experts in the area of insurance coverage, benefits, and exclusions. Plaintiffs justifiably reposed trust in said Defendants and relied upon said Defendants to advise them relative to the Plaintiffs' insurance needs in light of the Plaintiffs' health and financial position.

66. In light of the relationship between the Plaintiffs and Defendants, the Defendants had a fiduciary duty to provide

complete and truthful information to Plaintiffs when they solicited, sold, and collected premiums on the policies of insurance made the basis of this suit. Moreover, said Defendants had a duty to act in the best interests of Plaintiffs, or at least not to act in a manner which was directly adverse to the interests of the Plaintiffs.

Complaint, ¶¶ 56, 60, 65–66.

The Court agrees that this suit differs from one in which plaintiffs allege that an insurance agent has breached a fiduciary duty relating to the recovery of a claim against the insurer. Here, Plaintiffs alleged that Agent Defendants had a fiduciary duty to only collect insurance premiums that were actually due under the policy and to disclose to Plaintiffs that they were paying premiums for a benefit which would not be honored. Plaintiffs further allege that the Agent Defendants breached this fiduciary duty.

However, Plaintiffs have not directed the Court to any case in which Mississippi law has recognized the creation of a fiduciary duty between an insurance agent and an insured under circumstances similar to those presented here. The cases cited by Plaintiff each involve circumstances indicating a history of dealings between the parties giving rise to a fiduciary relationship. The circumstances here do not involve such circumstances. Rather, the circumstances here indicate a simple relationship between an insurance salesman and a client. Accepting all of Plaintiffs' unchallenged allegations as true, Plaintiffs cannot establish the creation of a fiduciary relationship here.

Nine of the eleven Plaintiffs essentially allege that a fiduciary relationship arose with the insurance agents because in purchasing insurance policies, those Plaintiffs chose to rely on the advice of the agents selling those policies. Depositions of Booker, Boyd, Dennis Cage, Mary Cage, Gooden, Green, Hayes, Irene Smith, and Louis Smith, Exhibits B, C, D, E, F, G, H, I, and J, attached to Response of Defendants to Motion to Remand. However, the purchases of insurance described by Plaintiffs are all the type of arms' length transactions that do not give rise to any special relationship. *See Langston*, 820 So.2d at 757. None of these Plaintiffs has come forward with facts or assertions that could form a reasonably arguable basis for the creation of a fiduciary relationship. Instead, depositions taken of those nine Plaintiffs indicate that those Plaintiffs relied on the insurance agents only as salesmen. That is, those Plaintiffs engaged in short-term, arms' length transactions with the insurance agents in question for the limited purpose of purchasing the insurance policies that were in fact purchased.

 Two Plaintiffs allege that they knew their insurance agents socially, so that the relationship was something more than that of an agent and a customer. *See* Winters, Exhibit K, attached to Response of Defendants to Motion to Remand.; *see also* Deposition of Stallings, Exhibit A, attached to Rebuttal of Plaintiffs in Support of Motion to Remand. Winters testified that she knew Defendant Jerry Chandler as "a friend", beyond Chandler's status as an insurance agent. Winters Deposition, pp. 34–36. Winters testified that Chandler was a friend of the family, who she met through her grandparents. *Id.* at 36. Winters further testified that Chandler visits her grandmother for reasons other than for purposes of collecting insurance premiums. *Id.* Winters testified that she has had many conversations with Chandler, discussing family, the weather, and local politics. *Id.* at 34. However, Winters testified that she never had any discussion with Chandler regarding any financial matters other than purchasing insurance through him as an

agent. *Id.* at 34–35. Winters testified that she never turned to Chandler for advice regarding such matters as loans, credit cards, or investment matters, and that Chandler was never involved in any business transaction with her or her family, other than the purchase of insurance. *Id.* at 34–35.

Stallings testified that she has known Defendant Wallace Cunningham for approximately twenty-six years because Cunningham attends the same church as does Stallings and her family, and because Cunningham has previously sold insurance policies to members of her family. Stallings Deposition, pp. 28–29. Additionally, Stallings has often seen and interacted with Cunningham in the community because they have performed together in separate gospel groups. *Id.* at 52. As evidence of her relationship with Cunningham, Stallings testified that Cunningham did not need to ask her for her social security number or for her health history when helping her fill out her insurance application, because he already knew those things. *Id.* at 23, 54. Stallings also testified that Cunningham ate dinner with her both at her house and at her mother's house on many occasions. *Id.* at 55. Stallings further testified that Cunningham was "kind of like a family member." *Id.* at 29. Stallings testified that she never had any discussion with Cunningham seeking financial advice other than for purchasing insurance through him as an agent. *Id.* at 29. Stallings alleges that because of her social relationship with Cunningham, that she trusted him to fully explain to her any insurance policy which she purchased from him. *Id.* at 48. Stallings testified that Cunningham knew she did not understand the policies in question, and that she trusted him. *Id.*

Plaintiffs argue that the testimony of Stallings indicates a history of prior dealings that establish a relationship of confidentiality and trust with Cunningham. Plaintiffs argue that because of this relationship, Stallings trusted Cunningham's judgment and trusted him to protect her interests.

The Mississippi Supreme Court has recently clarified the circumstances which can give rise to a fiduciary relationship. The court stated that such a relationship may exist where "(1) the activities of the parties go beyond their operating on their own behalf, and the activities for the benefit of both; (2) where the parties have a common interest and profit from the activities of the other; (3) where the parties repose trust in one another; and (4) where one party has dominion or control over the other." *University Nursing Associates, PLLC v. Phillips,* 2003 WL 328034, *2 (Miss.2003). The court also reiterated that no fiduciary relationship is created "where the relationship between the two parties was no more than an arms-length business transaction involving a normal debtor-creditor relationship." *Id.* at *3 (citations and internal quotation marks omitted). Finally, the court also stated that "[o]ne of the key elements of a fiduciary relationship is the fiduciary's control of the supervised party's property, and that things of value such as land, monies, a business, or other things of value must be possessed or managed by the dominant party." *Id.* (citations and internal quotation marks omitted).

Accepting all unchallenged evidence of Plaintiffs as true, including the deposition testimony of Winter and Stallings, the Court finds that no Plaintiff has described the sort of relationship that can give rise to a fiduciary relationship under Mississippi law. The record indicates that no Plaintiff in this suit relied on any Agent Defendant for any type of business or financial advice except for the purchase of insurance policies. The factors cited in *Phillips* are

not satisfied here. The record indicates no history of dealings of the sort that can give rise to a fiduciary relationship between any Plaintiff and any Agent Defendant. Instead, the record indicates that each Plaintiff conducted an arms' length transaction for the purchase of insurance from an Agent Defendant. The fact that the parties involved knew each other socially does not elevate an arms' length transaction to the level of a fiduciary relationship.

Another recent decision by the Mississippi Supreme Court counsels even more directly against finding that Plaintiffs here could establish the existence of fiduciary relationships with the Agent Defendants. In finding that no fiduciary relationship arose in the context of a loan transaction between a bank and its customer, the court noted that "[w]hile one normally does not enter into a contract with another unless he trusts and has confidence in him, contract and debt amount to a business and not to a fiduciary relationship." *AmSouth Bank v. Gupta,* 838 So.2d 205, 216 (Miss. 2002). The plaintiff relied on *Lowery* to try to establish the existence of a fiduciary relationship. The court indicated that the finding in *Lowery* that the existence of a fiduciary relationship was an issue of fact could only be invoked under special circumstances involving a history of dealings between the parties indicating the creation of some sort of special arrangement. *Gupta,* 838 So.2d at 217. The court further indicated that in an ordinary transaction, no fiduciary relationship will arise.[2] *Id.*

Here, no special circumstances exist regarding a history of dealings between any Plaintiff and any Agent Defendant indicating a special arrangement on which any Plaintiff could have reasonably relied in the transactions that are the subject of this suit. The Mississippi Supreme Court has not indicated in any decision that a history of social interaction between parties could elevate an ordinary arms' length business relationship into a fiduciary relationship. No Plaintiff has presented evidence of prior transactions with an Agent Defendant indicating a history of creating special arrangements. No Plaintiff has presented evidence of prior dealings indicating that an Agent Defendant has ever done anything out of the ordinary regarding the subject transactions. No Plaintiff has presented any evidence indicating the existence of a relationship with an Agent Defendant that would justify that Plaintiff in relaxing his normal vigilance regarding an arms' length business transaction.

The courts must not be blind to the realities of the world. Insurance agents are placed in a position to serve two masters, their employer and their customer. Clearly, agents owe a duty to their employer. Insurance agents have a duty to sell insurance policies offered by their employers. Most agents are involved in their communities. Most agents have friends and social acquaintances. Most agents undoubtedly attempt to sell policies to these friends and social acquaintances, as well as to other people met through their community connections. The law does not elevate each such transaction to the level of a fiduciary relationship.

Precedents establish that in certain particularized circumstances, an agent may engage in such a history and pattern of dealings with a customer that a fiduciary relationship will arise. Precedents establish that when facts exist in the record that, if proved, would establish such circumstances, courts should allow the issue to be determined by the trier of fact.

---

2. The court ruled that no fiduciary relationship existed between the bank and its customer in *Gupta* as a matter of law. The court ruled that "it was reversible error to let the issue [of the existence of a fiduciary relationship] go to a jury." *Gupta,* 838 So.2d at 217.

However, precedents do not establish that a pattern of social interaction, unaccompanied by any history of dealings regarding financial matters, may give rise to such a fiduciary relationship. Resolving all questions of fact and ambiguities of law in favor of Plaintiffs, the Court finds that no Plaintiff has an arguably reasonable basis for establishing the existence of a fiduciary relationship with any Agent Defendant, and thus no Plaintiff can maintain a claim for breach of fiduciary duty against any Agent Defendant.

## C. REMAINING CLAIMS

██ Plaintiff Irene Smith testified that she purchased an insurance policy through Defendant Agent Danny Tharp. Irene Smith Deposition, p. 77. Irene Smith testified that while Tharp was completing an insurance application for her, she told Tharp that she and her husband were both disabled and receiving SSI payments, and that Tharp told her this would have no effect on her policy. *Id.* at 77–78. Smith asserts that this statement by Tharp, combined with his act of selling her a waiver of premium disability provision that was worthless, was an affirmative misrepresentation of the truth that prevented Smith from discovering her fraud claims.

██ It is well settled under Mississippi law that a contracting party is under a legal obligation to read a contract before signing it. *See Godfrey, Bassett & Kuykendall Architects, Ltd. v. Huntington Lumber & Supply Co., Inc.,* 584 So.2d 1254, 1257 (Miss.1991). *See also Koenig v. Calcote,* 199 Miss. 435, 25 So.2d 763 (1946); *McCubbins v. Morgan,* 199 Miss. 153, 23 So.2d 926 (1945). Moreover, knowledge of the contents of a contract will be imputed to a contract party even though she did not read the contract before signing it.

*See Cherry v. Anthony, Gibbs, Sage,* 501 So.2d 416, 419 (Miss.1987). Here, Plaintiffs do not deny that each of them was in possession of documents disclosing the waiver of premium benefits information and amounts. The documents are clear and unambiguous, and attached to each of their depositions. Thus, the terms of all contracts were made available to Plaintiffs, and any reliance on alleged misrepresentations of those terms is, as a matter of law, unreasonable. *See Carter v. Union Security Life Ins. Co.,* 148 F.Supp.2d 734 (S.D.Miss.2001) (Lee, J.). Accordingly, Plaintiffs have no arguably reasonable basis for recovery for fraud by suppression or concealment, or for fraudulent misrepresentation.

Because the Court finds that Plaintiffs have no arguably reasonable basis for recovery for any of their asserted claims, the Court further finds that the Agent Defendants were fraudulently joined. Accordingly, complete diversity of jurisdiction exists in this suit, and the Motion to Remand must be denied.

Additionally, because the Court has found that Plaintiffs have no arguably reasonable basis of recovery against the Agent Defendants and that they were fraudulently joined, all claims against the Agent Defendants should be dismissed from this action. *See Carriere v. Sears, Roebuck and Company,* 893 F.2d 98 (5th Cir.1990).

## IV. CONCLUSION

IT IS THEREFORE ORDERED that the Motion of Plaintiffs to Remand [26–1] is hereby denied [3].

IT IS FURTHER ORDERED that Defendants Mitchell Acey, Cascille Baker,

---

**3.** It appears that this Motion to Remand, filed December 4, 2002, is docketed under case number 3:02–CV–1235. The Motion should be docketed under case number 3:02–CV–1653.

Carl Bloomquist, Jerry Chandler, Earline Christopher, Wallace Cunningham, Franklin Floyd, Lanny Haley, Sr., Benjamin May, Laney O'Briant, Wyomman Reeves, Jr., William Robinson, Willie Spells, Norman Stafford, Candice Swindle, and Danny Tharp, are hereby dismissed from this action with prejudice.